**The SCOTCH WHISKY ASSOCIATION et al., Plaintiffs-Appellees,**

v.

**BARTON DISTILLING COMPANY (now known as Barton Brands, Inc.), Defendant-Appellant.**

**No. 71–1631.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1972.

Decided Nov. 12, 1973.

---

Edgar Bernhard, Merrill A. Freed, Selwyn Zun, Robert W. Gettleman, Chicago, Ill., for defendant-appellant.

Beverly W. Pattishall, Robert M. Newbury, David C. Hilliard, Chicago, Ill., for plaintiffs-appellees.

Before HASTINGS, Senior Circuit Judge, and FAIRCHILD and PELL, Circuit Judges.

FAIRCHILD, Circuit Judge.

Two of plaintiffs are producers of Scotch whisky in Scotland, marketed throughout much of the world, including Panama and the Canal Zone. Plaintiff Association was formed to promote the interests of distillers and merchants in Scotland. Defendant Barton is a Delaware corporation which produces and markets alcoholic beverages in the United States and elsewhere. One of defendant's products is Scotch whisky sold under the trademark House of Stuart. This action concerns a product distributed under the "House of Stuart Blended Scotch Whisky" label in Panama, which reached the Canal Zone as well.

In 1964, as amended in 1965, defendant made an agreement appointing a Panamanian corporation, Diers & Ullrich, its exclusive distributor in Panama. Defendant supplied Diers & Ullrich with House of Stuart labels and bottles, shipped from the United States, and vatted Scotch malts, shipped from Scotland. Diers & Ullrich mixed the Scotch malts with locally produced spirits and sold the product under the House of Stuart label. It appears without dispute that the House of Stuart label indicates that the product has its origin in Scotland, and that when applied to the Diers & Ullrich product there was a false designation of origin.

15 U.S.C. § 1125(a), part of the Lanham Trademark Act of 1946, provides in part that one who affixes or uses in connection with any goods a false designation of origin and causes the goods to enter into commerce shall be civilly liable to a person doing business in the locality falsely indicated.

Plaintiffs alleged that defendant conspired in the use of labels indicating origin in Scotland on spurious Scotch whisky, but the district court found no more than that defendant knew, or should have known, of the practice of Diers & Ullrich. The district court, 338 F.Supp. 595, concluded that the use of the label was a false designation of the place of origin in violation of 15 U.S.C. § 1125(a) and certain provisions of the International Convention of Paris for the Protection of Industrial Property; and that defendant was responsible for the use of the label. Judgment was entered enjoining defendant from using the words "Scotch whisky" or its House of Stuart trademark or otherwise indicating origin in Scotland in connection with a product similar to the one involved, and awarded plaintiffs reasonable attorneys' fees.

On appeal, defendant contends: (1) that the district court lacked jurisdiction over the subject matter; (2) that under the circumstances an injunction was unnecessary and should not have been issued; and (3) that the award of attorneys' fees was unwarranted.

### (1) *Jurisdiction.*

The essence of defendant's position is that the goods bearing the challenged label were produced in Panama and caused to enter into the commerce of Panama, not the interstate or foreign commerce "which may lawfully be regulated by Congress." See 15 U.S.C. § 1127, so defining "commerce" and providing "The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce . . . . "

It is true that it was the labels and bottles supplied by defendant

which were transported from within the United States to Panama. Although defendant's agreement gave it the power to control the ingredients of the product, and thus defendant was properly charged with responsibility for the blending and labeling, this process did not happen within the United States. We think, however, that so literal a concept of entering into commerce is untenable. No principle of international law bars the United States from governing the conduct of its own citizens upon the high seas or even in foreign countries when the rights of other nations or their nationals are not infringed. Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits. The question is whether Congress intended the Act to apply to a situation of this type. Steele v. Bulova Watch Co., 344 U.S. 280, 285–286, 73 S.Ct. 252, 97 L.Ed. 252 (1952).

In *Steele*, the Supreme Court construed another section of the act, 15 U. S.C. § 1114(1), which creates a civil cause of action against one who uses an infringing mark "in commerce." The Court upheld a broad concept of "commerce."

Steele was a United States citizen who registered the trademark "Bulova" in Mexico. He imported parts from the United States and assembled and sold watches in Mexico. Plaintiff Bulova Watch Company manufactured, advertised, and sold watches in the United States and elsewhere, using a trademark registered in the United States. Defective spurious Bulova watches filtered back to the United States and were brought to jewelers for repair by dissatisfied owners. In deciding that the Act applied, the Court considered both the purchase of parts in the United States, and the advent of some watches in the United States, as well as the adverse reflection Steele's goods could have on plaintiff's reputation both in the United States and elsewhere.

Defendant correctly points out that there are factual differences between *Steele* and the case at bar. Steele personally sold watches in Mexico under an infringing mark while defendant sold mislabeled whisky in Panama only vicariously; Steele's Bulova trademark was ultimately nullified by Mexican decree while here it has not been demonstrated that Diers & Ullrich violated any Panamanian law; some of Steele's watches did come into the United States and damage the American owner of the trademark in this country while the Diers & Ullrich product appears to have reached only Panama and the Canal Zone, and damaged the Scotch plaintiffs only in those markets. None the less, viewing the entire course of business and the responsibility found on the part of defendant, we think the "commerce" involved began with defendant's acts in the United States and continued to the ultimate distribution of the whisky.

In *Steele*, the Supreme Court emphasized the invalidation of the Mexican trademark registration because of the danger otherwise of affront to Mexican sovereignty: the extraterritorial application of the United States trademark laws would nullify the affirmative grant of trademark protection within Mexico by the Mexican government. However, in the case at bar no such conflict is present. First, although the Panamanian government has apparently not prohibited the sale of local spirits under the designation of "Scotch whisky," it has taken no affirmative action to protect either the United States licensor or the Panamanian distributor in doing so. Moreover, the injunction is directed only against the United States licensor which acts only vicariously in Panama where Diers & Ullrich is not prohibited by the injunction from continuing to manufacture and market adulterated whisky.

Although there is no evidence that the adulterated Scotch whisky filtered into the United States, defendant concedes that sales of the product (though few) were made in the Canal Zone. Title 4,

section 471 of the Canal Zone Code provides that the trademark laws of the United States have the same force and effect in the Canal Zone as in the continental United States.

■ We note that had the defendant made the same arrangements with an American licensee who packaged the mislabeled House of Stuart Scotch Whisky in the United States and shipped it to Panama, there would be no question but that the defendant caused the mislabeled goods to enter commerce. The purpose underlying the Lanham Act, to make actionable the deceptive use of false designations of origin, should not be evaded by the simple device of selecting a foreign licensee. *Steele,* p. 287, 73 S.Ct. 252.

Defendant argues that Vanity Fair Mills, Inc. v. T. Eaton, 234 F.2d 633 (2d Cir., 1956), cert. denied 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), reh. denied 352 U.S. 913, 77 S.Ct. 144, 1 L.Ed. 2d 120 (1956), precludes extraterritorial application of the Lanham Act here. However, in *Vanity Fair* the defendant was a foreign national who acted in his home country under a presumably valid trademark registration in that country. *Vanity Fair, supra,* at p. 642. Defendant also cites George W. Luft Company v. Zande Cosmetic Company, 142 F.2d 536 (2d Cir., 1944), cert. denied 323 U. S. 756, 65 S.Ct. 90, 89 L.Ed. 606 (1944); however, in *Luft,* the defendants had obtained a registered and valid trademark from a foreign country and the decision in *Luft* preceded enactment of the Lanham Trademark Act as well as the interpretation of it in *Steele.*

We conclude that a cause of action was established under the Lanham Act and that the district court had jurisdiction. It is unnecessary to discuss plaintiffs' reliance on the Convention of Paris for the Protection of Industrial Property and its implementation by 15 U.S.C. § 1126(b).

### (2) *Injunctive Relief.*

■■ Defendant concedes that it is generally within the sound discretion of a court of equity to grant or deny an injunction against conduct which has ceased before the trial has taken place. It contends, however, that there was an abuse of discretion here, where, after the commencement of this action, but two years before trial, it took steps to halt the practice complained of and eventually severed relations with Diers & Ullrich.

The amended agreement with Diers & Ullrich was dated April 21, 1965 and the action was brought April 8, 1969. Defendant had not exercised its rights to inspect and control the Diers & Ullrich product at least up to the time of an apparently ineffective request in the summer of 1968. In 1966 and later there were events which should reasonably have caused defendant to inquire about the practice. The district court found that defendant knew or should have known of the spurious product, and that the spurious product was produced as late as July, 1969.

We are unable to say that there was an abuse of discretion in granting an injunction.

### (3) *Attorneys' fees.*

■ The district court awarded reasonable attorneys' fees to plaintiffs, to be assessed after any right of appeal has been exhausted or expired. The general rule in American courts is that attorneys' fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor. Fleischmann Corp. v. Maier Brewing, 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L. Ed.2d 475 (1967). Limited exceptions are noted at p. 718–719, 87 S.Ct. 1404. See also Mills v. Electric Auto-Lite, 396 U.S. 375, 392, 90 S.Ct. 616, 24 L.Ed.2d 593. Exceptions were listed by this court in Walker v. Columbia Broadcasting System, Inc., 443 F.2d 33, 35–37.

The present case does not fall within any of the exceptions. We do not view it as presenting "overriding considerations of justice" (See *Fleischmann* and *Mills*) nor an instance of a defense maintained in bad faith, vexatiously,

wantonly, or for oppressive reasons (See *Walker*).

In so far as the judgment appealed from awarded attorneys' fees, it is reversed, and in all other respects, affirmed. Costs on appeal awarded to plaintiffs-appellees.