821 F.2d 399
 3 U.S.P.Q.2d 1001
 JOHN WALKER AND SONS, LTD., Plaintiff-Appellant,
v.
DeMERT & DOUGHERTY, INC., Collection 2000 International,
Inc., Blasser Brothers, Inc., S.A., Joseph Blasser
and Eduardo Blasser, Defendants-Appellees.
 No. 86-1756.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 22, 1986.
Decided June 4, 1987.
 
 David C. Hilliard, Pattishall, McAulliffe & Hofstetter, Chicago, Ill., for plaintiff-appellant.
 Henry S. Kaplan, Dressler, Goldsmith, Shore, Sutker & Milnamow, Ltd., Chicago, Ill., for defendants-appellees.
 Before COFFEY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 COFFEY, Circuit Judge.
 
 
 1
 Plaintiff-appellant John Walker and Sons, Ltd. ("Walker") appeals the district court's grant of summary judgment in favor of defendant-appellee DeMert & Dougherty, Inc. ("DeMert") and also appeals the trial court's grant of a motion to dismiss in favor of Collection 2000 International, Inc., Blasser Brothers, Inc., S.A., Joseph Blasser, and Eduardo Blasser ("Florida defendants"). The trial court held that DeMert was not liable to Walker for trademark infringement under the Lanham Act, 15 U.S.C. Secs. 1051-1127, that Walker had failed to establish that an Illinois court could exert long-arm jurisdiction over the Florida defendants, and further that venue was not proper in the Northern District of Illinois as to Collection 2000 International, Inc., Blasser Brothers, Inc., S.A., Joseph Blasser, and Eduardo Blasser. We affirm in part, reverse and remand in part.
 
 
 2
 * John Walker and Sons, Ltd. ("Walker") produces whiskey in Scotland and markets its product on a worldwide basis, selling it to consumers in various nations including the United States, Panama, and Columbia. Walker is incorporated under the laws of the United Kingdom and has its principal place of business in London, England. In its complaint, Walker alleges that it has consistently used distinctive "Black Label" and "Striding Figure" trademarks in conjunction with the advertising of its whiskey. Walker registered both the "Black Label" and "Striding Figure" trademarks with the United States Patent and Trademark Office. In its complaint Walker further alleges that "as a result of [its] extensive sales, advertising and promotion, [its] trademarks have acquired a secondary meaning, distinctiveness and commercial magnetism ... and enjoy a substantial prestige and saleability and are considered to be of high quality."
 
 
 3
 Defendant-appellee DeMert & Dougherty, Inc. ("DeMert"), is a filler of aerosol cans incorporated under the laws of Illinois with its principal place of business in Oakbrook, Illinois. As part of its services, DeMert acts as an intermediary for its customers in locating can manufacturers who agree to use its customers' artwork on their cans. Defendants-appellees Collection 2000, Blasser Brothers, Inc., S.A., Joseph Blasser, and Eduardo Blasser jointly market cosmetics and other personal care products. Collection 2000 International, Inc. (Collection 2000) is a Florida corporation with its principal place of business located in Opalocka, Florida, and Blasser Brothers, Inc., S.A. is a Panamanian corporation that maintains a mailing address in Opalocka, Florida. Defendant-appellee Joseph Blasser is a resident of Miami, Florida and an officer of Collection 2000. Eduardo Blasser is also a resident of Miami, Florida, and is the president of Blasser Brothers, Inc., S.A. (Blasser Brothers).
 
 
 4
 In November, 1982, Collection 2000 executed a contract with DeMert to produce approximately 50,000 spray deodorant cans featuring alleged simulations of Walker's "Black Label" and "Striding Figure" trademarks. Collection 2000 provided DeMert with the initial artwork for the cans, and DeMert filled the deodorant cans and shipped them to a warehouse in Miami, Florida. DeMert was paid approximately $23,900 for filling the cans and placing Collection 2000's artwork on them. The cans of deodorant were subsequently sold in Panama and Columbia through Transcontinental Overseas, Inc., not a party to the suit.
 
 
 5
 Walker filed suit in the United States District Court for the Northern District of Illinois alleging that the placement of artwork on the deodorant cans and their shipment and subsequent sale constituted a trademark infringement in violation of the Lanham Act, 15 U.S.C. Secs. 1051-1127. Walker named DeMert, Collection 2000, Blasser Brothers, and Joseph and Eduardo Blasser as defendants in the action. The trial court granted DeMert's motion for summary judgment on Walker's complaint that DeMert had violated the Lanham Act and also granted the remaining defendants' motion to dismiss without explaining the basis of its decision, holding that an Illinois court cannot exercise personal jurisdiction over Collection 2000, Joseph and Eduardo Blasser and Blasser Brothers. The court also without explanation held that venue was not proper in the Northern District of Illinois. Walker appeals.
 
 II
 
 6
 Walker argues that the district court erred as a matter of law in granting Collection 2000's, Blasser Brothers', and Joseph and Eduardo Blasser's motion to dismiss, ruling that an Illinois court could not exercise personal jurisdiction over these defendants. "A federal district court in Illinois has personal jurisdiction over a party in a diversity case only if an Illinois court would have such jurisdiction." Jacobs/Kahan & Company v. Marsh, 740 F.2d 587 (7th Cir.1984). See Fed.R.Civ.P. 4(e). In Illinois, personal jurisdiction over a nonresident does not depend exclusively upon the physical presence of the defendant within the state. The Illinois long arm statute establishes the standard for the exercise of personal jurisdiction over non-resident defendants:
 
 
 7
 (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
 
 
 8
 (1) The transaction of any business within this State;
 
 
 9
 (2) The commission of a tortious act within this State; ...
 
 
 10
 Ill.Rev.Stat. ch. 110, para. 2-209 (1985).
 
 
 11
 In determining whether personal jurisdiction can be exercised in a particular case, "we must determine whether the long-arm statute should be construed in a way which embraces [the] plaintiff['s] claim against [the] defendant[s], and if so, whether the assertion of jurisdiction by our [Illinois] court over [the] defendant[s] is prohibited by due process safeguards." Veeninga v. Alt, 111 Ill.App.3d 775, 779, 780, 781, 67 Ill.Dec. 544, 444 N.E.2d 780 (1982). See also Vena v. Western General Agency, Inc., 543 F.Supp. 779, 784 (N.D.Ill.1982). Under the provisions of the Illinois long-arm statute, a nonresident submits to the jurisdiction of the Illinois courts if he engages in the "transaction of any business" within Illinois and if the cause of action arises out of this transaction. Ill.Rev.Stat. ch. 110, Sec. 2-209(a)(1) (1983). Prior to 1981, the Illinois courts interpreted the phrase "transaction of any business" in the long-arm statute as giving them the authority to exert personal jurisdiction over non-resident defendants to the extent permitted under the due process clause of the United States Constitution. Nelson v. Miller, 11 Ill.2d 378, 143 N.E.2d 673 (1957). See also McBreen v. Beech Aircraft Corporation, 543 F.2d 26, 28 (7th Cir.1976). In Green v. Advance Ross Electronics Corp., 86 Ill.2d 431, 56 Ill.Dec. 657, 427 N.E.2d 1203 (1981), the Illinois Supreme Court clarified the relationship between the Illinois long-arm statute and the due process clause, stating that the construction and application of the Illinois long-arm statute does not "depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction" but depends also on the Illinois courts' interpretation of the statute as well. Id. at 436, 56 Ill.Dec. at 434, 427 N.E.2d at 1206. "A statute worded in the way [Illinois' statute] is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible." 56 Ill.Dec. at 434, 427 N.E.2d at 1206. In Cook v. Associates, Inc. v. Lexington United Corp., 87 Ill.2d 190, 57 Ill.Dec. 730, 429 N.E.2d 847 (1981), the Illinois Supreme Court stated that "the boundaries or limits under [the Illinois] statute are not to be equated with the 'minimum contacts' test under the due process clause." Id. at 197, 57 Ill.Dec. at 733, 429 N.E.2d at 850.
 
 
 12
 In Deluxe Ice Cream Company v. R.C.H. Tool Corp., 726 F.2d 1209 (7th Cir.1984), this court stated that "it is clear that the question of personal jurisdiction under the Illinois long-arm statute is separate from the question of whether holding a nonresident defendant amenable to suit would violate due process." Id. at 1214. In Jacobs/Kahan & Co. v. Marsh, 740 F.2d 587 (7th Cir.1984), we outlined the analysis a federal court should use in determining whether an Illinois court can properly exercise personal jurisdiction. We stated:
 
 
 13
 "[t]he requisite analysis consists of three questions: (1) whether the defendant engaged in one of the jurisdictional acts enumerated in the statute (in this case, "the transaction of any business"); (2) whether the cause of action is one "arising from" the jurisdictional act; and (3) whether the exercise of long-arm jurisdiction is consistent with due process as defined by prevailing constitutional standards."
 
 
 14
 Id. at 590.
 
 
 15
 Turning to the present case, we note that when reviewing the district court's dismissal of Joseph and Eduardo Blasser, Collection 2000 and Blasser Brothers "all conflicts in the affidavits and depositions submitted by the parties must be resolved in favor of the plaintiff." Deluxe Ice Cream Company v. R.C.H. Tool Corp., 726 F.2d 1209, 1215 (7th Cir.1984). See also Neiman v. Rudolf Wolff & Co., 619 F.2d 1189, 1193 (7th Cir.1980); United States Railway Equipment Co. v. Port Huron and Detroit Railroad Company, 495 F.2d 1127, 1128 (7th Cir.1974); Oce-Industries, Inc. v. Coleman, 487 F.Supp. 548 (N.D.Ill.1980). In determining whether the district court's decision that it lacked jurisdiction over Collection 2000, Joseph Blasser, Eduardo Blasser and Blasser Brothers was proper, we must determine whether any of these defendants-appellees "transacted any business" within the parameters of the Illinois long-arm statute. Ill.Rev.Stat. ch. 110, para. 2-209 (1985). "The actual physical presence of [the defendants] is not required in order to find that [they are] transacting business within the State [of Illinois] under [the long-arm statute]." International Merchandising Associates, Inc. v. Lighting Systems, Inc., 64 Ill.App.3d 346, 20 Ill.Dec. 838, 841, 380 N.E.2d 1047, 1051 (1978). "A single act of a defendant can be sufficient to find that business was transacted within the State. It is necessary, however, that the business which is done is related to the cause of action." Id. at 1051. "[T]o qualify as a transaction of business that establishes jurisdiction under the [Illinois] statute, an act by the nonresident defendant must give rise to the plaintiff's cause of action." Deluxe Ice Cream Company v. R.C.H. Tool Corp., 726 F.2d 1209, 1215 (7th Cir.1984).
 
 
 16
 In Cook Associates, Inc. v. Colonial Broach & Machine Co., 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), the defendant, a Delaware corporation doing business in Michigan, telephoned the plaintiff, an Illinois employment agency, and inquired about one of the plaintiff's clients. After hiring the plaintiff's client, the defendant refused to pay a referral fee to the plaintiff, and the plaintiff sued in Illinois state court for breach of contract. The Illinois Appellate Court held the defendant's single phone call into Illinois was enough to constitute the "transaction" of business in Illinois. In Jacobs/Kahan & Company v. Marsh, 740 F.2d 587 (7th Cir.1984), we concluded "that the defendants' partial negotiation and execution of a contract while they were physically present in Illinois is 'the transaction of business' in Illinois." Id. at 590.
 
 
 17
 The record reveals that Collection 2000 and Joseph Blasser met the requirement of the Illinois long-arm statute ("the transaction of business" in Illinois) since they contracted to obtain filled aerosol cans of deodorant from an Illinois corporation doing business in Oakbrook, Illinois, DeMert. Collection 2000 paid DeMert $23,902.10 for services rendered in Illinois. Robert Jakoubeck, the Sales Manager of the Aeropack Division of DeMert and Dougherty, Inc., stated in a deposition that DeMert and Collection 2000 had an ongoing business relationship "for many years." In addition, Jakoubeck stated that he regularly corresponded with Joseph Blasser and other employees of Collection 2000 and that Joseph Blasser and the other employees of Collection 2000 responded to Jakoubeck's letters and calls. Jakoubeck failed to specify the number of letters or calls he was referring to. In addition, Collection 2000 and Joseph Blasser sent artwork to Illinois for DeMert to use on its labels. Thus, Joseph Blasser and Collection 2000 satisfy the requirement of the Illinois long-arm statute in that they transacted business within the state of Illinois.
 
 
 18
 On the other hand, the record is void of proof establishing that Eduardo Blasser and Blasser Brothers transacted business within Illinois. Eduardo Blasser and Blasser Brothers did not enter into any contracts with DeMert for services. Although Robert Jakoubeck's deposition stated that on at least one occasion he dealt with Eduardo Blasser, an examination of the record fails to establish that Eduardo Blasser or Blasser Brothers had any contacts within Illinois. Thus, the district court properly held that it could not exercise personal jurisdiction over Eduardo Blasser and Blasser Brothers since they did not transact any business in Illinois within the parameters of the Illinois long-arm statute.
 
 
 19
 While we have concluded that Collection 2000 and Joseph Blasser engaged in one of the jurisdictional acts enumerated in the Illinois long-arm statute (in this case, "the transaction of any business"), we must now determine 1) whether Walker's cause of action is one "arising from" the jurisdictional acts of Collection 2000 and Joseph Blasser and 2) whether the exercise of long-arm jurisdiction in the case is consistent with due process as defined by prevailing case law. Jacobs/Kahan & Company v. Marsh, 740 F.2d 587 (7th Cir.1984). In examining whether Walker's cause of action "arises from" Collection 2000 and Joseph Blasser's transaction of business in Illinois, we note that the Illinois long-arm statute "requires only that the cause of action lie in the wake of the transaction of business." Id. at 591. In In re Oil Spill by Amoco Cadiz, 699 F.2d 909 (7th Cir.1983), we held that a quasi-contractual indemnity action for damages caused by an oil spill in Europe satisfied the "arising from" requirement where the contract to build the ship which caused the spill had been negotiated in Illinois. Id. at 915. In Deluxe Ice Cream Company v. R.C.H. Tool Corp., 726 F.2d 1209, 1215-16 (7th Cir.1984), we held that a plaintiff's breach of warranty action against a non-resident seller "l[ay] in the wake of [arose out of]" an agency contract between the seller's representative and the manufacturer which had been partially negotiated in Illinois. In Loggans v. Jewish Community Center of Milwaukee, 113 Ill.App.3d 549, 555-57, 69 Ill.Dec. 484, 489-90, 447 N.E.2d 919, 924-25 (1983), the court held that a Wisconsin defendant's activities which consisted of placing notices of job openings with the Illinois Department of Labor and sending its notices to college campuses and Jewish centers in Illinois failed to meet the "transaction" of business requirement of the Illinois long-arm statute so as to give the Illinois trial court jurisdiction to entertain the plaintiff's personal injury claim. The court stated that the Illinois long-arm statute "requires that a plaintiff's claim be one which lies in the wake of the commercial activities by which defendant submitted to the jurisdiction of the Illinois courts." Id. at 557, 69 Ill.Dec. at 490, 447 N.E.2d at 925.
 
 
 20
 In the present case, the relationship between the cause of action and the transaction of business in Illinois is stronger than in either Amoco Cadiz or Deluxe Ice Cream because in this case, unlike Amoco Cadiz and Deluxe Ice Cream, the defendant had an ongoing business relationship with DeMert, an Illinois corporation doing business in Illinois. Walker's suit for trademark infringement is based on the business activities of DeMert, Collection 2000, and Joseph Blasser in Illinois. Hence, we can conclude that Walker's suit "arises out of" Collection 2000's and Joseph Blasser's transaction of business in Illinois and thus the Illinois long-arm statute gives the Illinois courts the authority to exercise personal jurisdiction over Collection 2000 and Joseph Blasser.
 
 
 21
 We must finally consider whether the exercise of long-arm jurisdiction in the case at bar "is consistent with due process as defined by prevailing constitutional standards." Jacobs/Kahan & Company v. Marsh, 740 F.2d 587, 590 (7th Cir.1984). The issue becomes whether Collection 2000 and Joseph Blasser had sufficient contacts with Illinois to satisfy the requirements of due process so as not to offend "traditional notions of fair play and substantial justice." International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). See also Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).
 
 
 22
 "Whether sufficient minimum contacts exist cannot be answered by applying a formula or rule of thumb, but by ascertaining what is fair and reasonable in the circumstances of the particular situation." O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir.1971) quoting Hutter Northern Trust v. Door County Chamber of Commerce, 403 F.2d 481, 484 (7th Cir.1968). "In the application of this flexible test, 'the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum'." O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir.1971) quoting Gray v. American Radiator & Standard Sanitary Corporation, 22 Ill.2d 432, 440, 176 N.E.2d 761, 765 (1961). The United States Supreme Court has stated:
 
 
 23
 "[W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by the 'benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well."
 
 
 24
 Burger King Corporation v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985).
 
 
 25
 Collection 2000 contracted with DeMert, an Illinois corporation operating in Oakbrook, Illinois, to obtain filled aerosol cans of deodorant and paid DeMert $23,902.10 for services rendered in Illinois. Collection 2000 received DeMert's shipment from Illinois of 57,480 cans of deodorant. Robert Jakoubeck, Sales Manager of the Aeropack Division of DeMert and Dougherty, Inc., stated in an affidavit that DeMert and Collection 2000 had an ongoing business relationship spanning "many years". In addition, Jakoubeck stated in a deposition that he regularly corresponded with Joseph Blasser and other employees of Collection 2000 and that Joseph Blasser and the employees always responded to Jakoubeck's letters and calls. In addition Collection 2000 forwarded artwork to DeMert in the state of Illinois to be placed on DeMert's cans. In Burger King Corporation v. Rudzewicz, the Supreme Court also stated:
 
 
 26
 "Jurisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are purposefully directed toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there."471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original). A review of the record and the facts set forth above reveals that Collection 2000 engaged in significant business activities within the State of Illinois. Collection 2000 contracted with DeMert, an Illinois corporation, and paid DeMert for its services. Collection 2000's president and employees frequently corresponded with and telephoned persons in Illinois in connection with Collection 2000's commercial activities within Illinois. Since Collection 2000 made a number of business contacts within the state of Illinois, the exercise of personal jurisdiction of an Illinois court over Collection 2000 does not offend "traditional notions of fair play and substantial justice."
 
 
 27
 Next we examine whether an Illinois court could exert personal jurisdiction over Joseph Blasser. Joseph Blasser, the president of Collection 2000, acted as the corporation's agent in its contract with DeMert. Joseph Blasser dealt with Robert Jakoubeck, the sales manager of DeMert's Aeropak Division, through phone calls into Illinois and letters mailed to and from Illinois. Joseph Blasser generally monitored DeMert's performance of its contract in Illinois through his communications into Illinois. At one point, Joseph Blasser personally approved of the label color on DeMert's cans. In addition, Joseph Blasser supplied the artwork to DeMert for its labels and shipped the allegedly infringing artwork into Illinois. The record reveals that Joseph Blasser had substantial contacts within the state of Illinois since, 1) he telephoned persons in Illinois, 2) he corresponded with employees of DeMert in Illinois, 3) he placed an order with DeMert, an Illinois corporation operating in Illinois, and 4) he negotiated with DeMert over DeMert's performance of its contract with Collection 2000 in Illinois. Since it has been established that Joseph Blasser conducted business in Illinois through his participation in the business of DeMert, an Illinois corporation operating in Illinois, and Collection 2000, he was amenable to personal jurisdiction within the State of Illinois.
 
 
 28
 We hold that the district court erred in dismissing Walker's complaint against Collection 2000 and Joseph Blasser since both of these defendants, as discussed above, had more than the sufficient minimum contacts with Illinois so as to render them amenable to jurisdiction within that State. We also hold that the trial court properly dismissed Eduardo Blasser and Blasser Brothers from Walker's suit since the record fails to establish that these defendants transacted any business in Illinois so as to make them susceptable to personal jurisdiction in Illinois.
 
 III
 
 29
 Walker also maintains that the district court erred in holding that venue was not proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391. Section 1391(b) states:
 
 
 30
 (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
 
 
 31
 28 U.S.C. Sec. 1391(b) (1982). Since jurisdiction in this case is based on the Lanham Act and not diversity of citizenship and since all of the defendants to this action do not reside within any single judicial district, under 28 U.S.C. Sec. 1391(b), venue is only proper in this case in the judicial district "in which the claim arose."
 
 
 32
 The appellees argue that for this court to rule that venue lies in the Northern District of Illinois would be improper since they made no sales of their allegedly infringing products to the general public in Illinois. The appellees rely on Tefal, S.A. v. Products International Company 529 F.2d 495 (3d Cir.1976). In a footnote in Tefal, the court states that "[i]t is undisputed that a cause of action for trademark infringement arises where the passing off occurs."[1] 529 F.2d at 496 n 1. The appellees maintain that since they did not sell their allegedly infringing product to the general public in Illinois, they did not "pass it off" to the general public as a product of the appellant Walker in Illinois and thus Walker's cause of action for trademark infringement could not have arisen in Illinois. While the court in Tefal said "that a cause of action for trademark infringement arises where the passing off occurs", it did not state that a cause of action for trademark infringement only arises where sales to the general public (passing off) occur.
 
 
 33
 In Noxell v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F.2d 312 (D.C.Cir.1985), the court held that venue in a trademark infringement case was improperly placed in the District of Columbia despite the fact that the defendant sold its product which allegedly infringed on the plaintiff's trademark to the general public in the District of Columbia. Even though the "passing off" occurred in the District of Columbia, the court held that venue was proper in California. The court based its decision on the policies underlying the venue statute such as convenience of the witnesses and accessibility of the evidence, 28 U.S.C. Sec. 1391(b), and stated that " '[v]enue limitations generally are added by Congress to insure a defendant a fair location for trial and to protect him from inconvenient litigation.' " Noxell v. Firehouse No. 1 Bar-B-Que Restaurant, 760 F2d 312, 316 (D.C.Cir.1985) quoting Johnson Creative Arts, Inc. v. Wool Master, Inc., 743 F.2d 947, 949 (1st Cir.1984).
 
 
 34
 In Leroy v. Great Western Corp., 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979), the Supreme Court established the analysis that a court should follow in determining where a cause of action arises for the purposes of venue under Sec. 1391(b) in situations in which it is not clear that the plaintiff's claim arose in one specific judicial district. The Court stated:
 
 
 35
 "[I]t is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts.... In our view, ... the broadest interpretation of the language of Sec. 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably even more) districts that with approximately equal plausibility--in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but not of the plaintiff)--may be assigned as the locus of the claim."
 
 
 36
 Id. at 185, 99 S.Ct. at 2717 (footnote omitted). The court in Noxell applied the analysis established in Leroy and stated:
 
 
 37
 In determining districts in which a claim may be regarded as having arisen for purposes of 28 U.S.C. Sec. 1391(b) where there is arguably more than one such district the controlling factors are the accessibility of relevant evidence and the convenience of the defendant (but not of the plaintiff).
 
 
 38
 760 F.2d at 314.
 
 
 39
 In employing the analysis recited above, we must initially consider the accessibility of evidence relevant to Walker's claim for trademark infringement to the U.S. District Court for the Northern District of Illinois. Since DeMert provides the majority of its services to customers in the Northern District of Illinois, and consequently its employees who might testify at trial reside in Illinois, an Illinois trial location would be more convenient for the witnesses. Collection 2000 sent the artwork for the cans which alleged to have infringed on Walker's trademark into Illinois, and DeMert applied the artwork to the product in Illinois. The business records of DeMert are located in Illinois as well as copies of correspondence between DeMert personnel and Joseph Blasser and other agents for Collection 2000. Thus, since the majority of the relevant documentary evidence that might be used at trial is located in the Northern District of Illinois and because a trial location in the Northern District of Illinois would be readily accessible to both parties and witnesses, the case should be tried in the Northern District of Illinois.
 
 
 40
 Following the analysis set forth in Noxell and Leroy, we must also consider the convenience of the defendants in defending a case in the Northern District of Illinois. We note that since DeMert is an Illinois corporation conducting the bulk of its business activities in northern Illinois it would not suffer any inconvenience in defending a claim in the Northern District of Illinois. In spite of the fact that Collection 2000 is doing business in Florida and Joseph Blasser is a Florida resident, they did conduct a significant amount of business in Illinois, maintaining a continuing business relationship with DeMert in Illinois. Since Joseph Blasser and Collection 2000 conducted substantial business in Illinois they cannot now be heard to argue that it is inconvenient for them to defend a case in Illinois and that for this reason they should be dismissed from the case. We hold that venue is proper in the Northern District of Illinois.
 
 IV
 
 41
 Walker next argues that the district court erred in granting DeMert's motion for summary judgment on the grounds that DeMert did not place allegedly infringing goods into interstate commerce as required by Sec. 32(1)(b) of the Lanham Act, 15 U.S.C. Sec. 1114(1)(b). We initially note that the district court may grant a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). The party moving for a summary judgment carries the burden of establishing that no genuine issue as to any material fact exists and that the movant is entitled to summary judgment as a matter of law. See Goldstick v. ICM Realty, 788 F.2d 456, 458 (7th Cir.1986). The district court held that DeMert did not place the goods in commerce pursuant to "the trademark laws of the United States, 15 U.S.C. Secs. 1051-1127." Mem.Op. and Or. 4/8/86, p. 7. The trademark laws of the United States, the Lanham Act, establish the rights and remedies available to holders of registered trademarks. Title 15 U.S.C. Sec. 1114(1) states:
 
 
 42
 (1) Any person who shall, without the consent of the registrant--
 
 
 43
 (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
 
 
 44
 (b) reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.
 
 
 45
 shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) of this section, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.
 
 
 46
 15 U.S.C. Sec. 1114(1) (1982).
 
 
 47
 The word "commerce" as used in the statute is defined as "all commerce which may be regulated by Congress." 15 U.S.C. Sec. 1127 (1982). It is undisputed that DeMert placed artwork which allegedly infringed on Walker's trademark on the cans it filled with deodorant. While the artwork used on the cans was initially supplied by Collection 2000, DeMert reproduced the artwork for the cans in Illinois and shipped them to Collection 2000 and Joseph Blasser in Florida. Collection 2000 and Joseph Blasser sold the cans to a third party, Transcontinental Overseas, Inc., which in turn resold the cans to consumers in Panama and Columbia.
 
 
 48
 In Scotch Whiskey Association v. Barton Distilling Company, 489 F.2d 809 (7th Cir.1973), we held that the defendant caused an infringing product to enter into commerce when it shipped labels and bottles from the United States to Panama. Although the final product (whiskey) was produced and sold in Panama, this court concluded that "the 'commerce' involved began with the defendants' acts in the United States and continued to the ultimate distribution of the whiskey." Id. at 812. Similarily, Walker persuasively argues that DeMert caused an allegedly infringing product to enter interstate commerce in Illinois because DeMert shipped the cans to Florida.
 
 
 49
 In Steele v. Bulova Watch Co., 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 319 (1952), the United States Supreme Court construed the word "commerce" as used in 15 U.S.C. Sec. 1114(1) to include the activities of an American citizen assembling in Mexico component parts shipped from the United States and selling an infringing product in Mexico. In deciding that the district court had jurisdiction under the Lanham Act, 15 U.S.C. Sec. 1114(1), the Supreme Court stated that "a United States district court has jurisdiction to award relief to [a plaintiff] against acts of trademark infringement and unfair competition consummated in a foreign country by a citizen and resident of the United States." Id. at 281, 73 S.Ct. at 253. In American Rice, Inc. v. Arkansas Rice Growers Cooperative Association, 701 F.2d 408, 413 (5th Cir.1983), the court relied on Steele to support the proposition that "the Lanham Act revealed a congressional intent to exercise its power to the fullest." In Scotch Whiskey, this court relied on Steele and stated:
 
 
 50
 "In Steele, the Supreme Court construed another section of the act, 15 U.S.C. Sec. 1114(1), which creates a civil cause of action against one who uses an infringing mark 'in commerce.' The Court upheld a broad concept of "commerce."
 
 
 51
 489 F.2d at 812.
 
 
 52
 We hold that, since DeMert shipped cans of deodorant bearing allegedly infringing trademarks to Florida, the commerce requirement of the Lanham Act was met. The district court held that the "in commerce" requirement of the Lanham Act was not satisfied and therefore the Lanham Act was inapplicable to the present case. Since we hold that the "in commerce" requirement of the Lanham Act was satisfied, we remand because an issue of material fact remains as to whether DeMert actually violated the Lanham Act. Therefore, we reverse the district court's grant of summary judgment in favor of DeMert.
 
 V
 
 53
 The judgment of the district court is reversed in part and affirmed in part and the case against DeMert, Collection 2000, and Joseph Blasser is remanded for trial consistent with this opinion.
 
 
 
 [1]
 The term "passing off" is used to refer to a situation in which an individual or company attempts to increase the sales of its goods by placing a trademark on its products that is deceptively similar to a popular, registered trademark