William SANDERS, an individual and Illinois citizen, and Joy Over One Publishing Co., Inc., an Illinois corporation, as assignee, Plaintiffs,

v.

Aretha FRANKLIN, a Michigan citizen, and Springtime Music, Inc., a Michigan corporation, Defendants.

No. 98 C 2594.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 26, 1998.

Donald L. Abraham, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Daniel John Voelker, William Nicholas Howard, Schwartz & Freeman, Chicago, IL, for Plaintiffs.

Lela Darlene Johnson, Howard Elliot Rosenblum, Sanchez & Daniels, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

MANNING, District Judge.

Defendants Aretha Franklin and Springtime Music Publishing, Inc. (SMP) move to dismiss this action for improper venue pursuant to 28 U.S.C. § 1406 or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404. For the reasons set forth below, the court grants their motion to transfer pursuant to § 1404.

### I. BACKGROUND

Plaintiffs William Sanders and Joy Over One Publishing Company (Joy Over One), both citizens of Illinois, brought this action against entertainer Aretha Franklin and SMP, invoking federal jurisdiction pursuant to 28 U.S.C. § 1332. The plaintiffs allege that venue is proper in this forum, pursuant to 28 U.S.C. § 1391, because the acts or omissions giving rise to this action arose in the Northern District of Illinois. For purposes of this motion, the court assumes that the factual allegations of the plaintiffs' complaint are true.

In 1973, Sanders composed a song entitled "Angel," and thereafter formed an oral contract with musician Aretha Franklin, giving her permission to perform Angel in exchange for receiving 50% gross revenues from the sale, use, or reproduction of the song. The contract was binding against Franklin, SMP, and any third party, authorized by Franklin or SMP, to record "Angel." Sanders and Franklin allegedly negotiated the oral royalty contract in Michigan while both were citizens of Michigan. Sanders subsequently moved to Illinois.

On or about June 12, 1973, Franklin recorded Angel which later became one of Franklin's greatest hits and was included on an album "The Very Best of Aretha Franklin, The 70's." Sanders claims that between 1973 and 1983, he received only a $500 cash retainer and approximately two or three royalty checks totaling "a few thousand dollars." On or about November 29, 1997, January 14, 1998, and March 25, 1998, Sanders received three checks for the grand sum of $40,026.52 for money due under the royalty agreement,

covering the use of Angel occurring between January 1, 1994 and thereafter. According to the complaint, Ulysses Whitaker Boykin, an attorney and agent for Franklin and SMP, sent a November 29, 1997 letter to Sanders, explaining that SMP and Franklin had been wrongfully withholding royalty payments for time extending between 1983 and 1994.

Later, in a February 26, 1998 letter, Boykin allegedly acknowledged that under the terms of Sanders' oral royalty agreement, the defendants owed him a duty to account and administer his royalties, less a 5% fee, and implicitly admitted they had violated those terms by failing to provide Sanders with an accounting. Sanders claims that, to date, Angel has generated approximately $1,000,000 in gross profits, but that he has received only $45,000 in royalties. In short, he is claiming that he is getting no "R–E–S–P–E–C–T!" As a result, he brought this suit alleging breach of contract, fraud, breach of fiduciary duty, and to impose a constructive trust against the defendants in the amount of $500,000.

Franklin and SMP moved to dismiss for improper venue pursuant to 28 U.S.C. § 1406(a). Alternatively, they seek to transfer this action pursuant to 28 U.S.C. § 1404(a), claiming that the Eastern District of Michigan is a more convenient forum and that transfer will promote the interests of justice. In response, Sanders claims that jurisdiction and venue is proper in the Northern District of Illinois and that the defendants' motion to transfer should be denied since it distorts the facts of the case. The court shall address their arguments in turn.

## II. ANALYSIS

### A. Applicable Law

■ District courts have greater discretion to transfer under § 1404(a) than they do to dismiss under *forum non conveniens. Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 253–54, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). "A district court may transfer a civil action for the convenience of the parties and witnesses [and] in the interests of justice ... to any other district or division where it might

have been brought." 28 U.S.C. § 1404(a). Under § 1404(a), a court has the discretion to transfer a case if the moving party demonstrates: (1) venue was proper in the transferor district; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice. *Pava v. Drom Int'l, Inc.,* 8 F.Supp.2d 1062, 1064 (N.D.Ill.1998).

■ The moving party bears the burden of demonstrating that the transferee forum is clearly more convenient than the current forum. *TruServ Corp. v. Neff,* 6 F.Supp.2d 790, 793 (N.D.Ill.1998), *quoting Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir.1989). In deciding a motion to transfer, the court must weigh the public interest and the private interests of the parties to the litigation. *TruServ Corp.,* 6 F.Supp.2d at 793.

■ The private interest factors include: (1) the plaintiff's choice of forum; (2) convenience to the parties; (3) the situs of material events; and (4) availability of evidence in each forum. *Coffey v. Van Dorn Iron Works,* 796 F.2d 217 (7th Cir.1986); *College Craft Cos. Ltd. v. Perry,* 889 F.Supp. 1052, 1054 (N.D.Ill.1995). The public interest factors focus on whether a change of venue will promote the interests of justice, and include: (1) the relation of the community to the issue of the litigation and the desirability of resolving controversies in their locale; (2) the court's familiarity with applicable law; and (3) congestion of the respective dockets and the prospects of earlier trial. *United Air Lines, Inc., v. Mesa Airlines, Inc.,* 8 F.Supp.2d 796, 799 (N.D.Ill.1998).

### B. Propriety of the respective venues

■ As an initial matter, the court must determine whether venue is proper in the Northern District of Illinois and the Eastern District of Michigan. Where, as here, the plaintiff's cause of action is based on diversity of citizenship under 28 U.S.C. § 1332(a), venue determinations are governed by 28 U.S.C. § 1391(a), which provides in relevant part:

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Franklin argues that venue in the Northern District of Illinois is improper because neither she nor SMP (both citizens of Michigan) reside within the Northern District of Illinois, and that all aspects of the contract negotiation and formation occurred in Michigan. Franklin and SMP characterize their contact with Illinois—arising from mailing the royalty checks to Sanders at his Illinois residence—as insignificant. Franklin and SMP assert that mailing the checks were, at best, a minor portion of the alleged breach of contract and fraud. Nonetheless the facts alleged in Sanders' complaint clearly indicate that the mailings played a part in the alleged fraud scheme. Under the Illinois long-arm statute, defendants are amenable to Illinois' jurisdiction, and in turn venue for purposes of § 1391, when they transact business within Illinois. *John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc.,* 821 F.2d 399 (7th Cir.1987). To qualify as a transaction that establishes jurisdiction under the Illinois long-arm statute, the defendant's act must give rise to the cause of action. *Id.*

In comparison to Sanders' other allegations, mailing royalty checks to Illinois was a minor portion of the parties' contract. Yet, the court agrees that the mailings could be construed as being part of Franklin and SMP's alleged scheme to defraud Sanders. Alternatively, the mailings—transacted in Illinois—were incidental to the performance of the contract. Hence, venue lies in the Northern District of Illinois since the action occurred within its jurisdiction.

In addition, Sanders' complaint clearly shows that the Eastern District of Michigan has proper jurisdiction over this case pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the plaintiff and defendants. Franklin and SMP are Michigan citizens and Sanders and Joy Over One are Illinois citizens. The $500,000 in royalties which Sanders seeks clearly exceeds the $75,000 amount in controversy requirement. As a result, the court must now weigh the public and private interest factors to determine whether this action should be transferred to the Eastern District of Michigan.

### C. *Public and Private Interest Factors*

#### 1. Plaintiff's choice of forum & site of material events

■ Sanders argues that the court must give greater deference to his choice of Illinois. Generally, a plaintiff's choice of forum is given deference unless where, as here, the chosen forum lacks any significant connection to the cause of action. *Heller Fin., Inc., v. Riverdale Auto Parts, Inc.,* 713 F.Supp. 1125, 1129 (N.D.Ill.1989).

■ The material site of events in this case is clearly Michigan. Sanders and Franklin negotiated the contract in Michigan while both were Michigan citizens. Although the checks were sent to Sanders from Michigan to Illinois, that was based on the fortuitous fact that Sanders moved to Illinois. Sanders' change of address does not change the substantive law which controls the contract. In diversity actions, the court is bound to apply the law of the forum state, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg., Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *U.S. Fire Ins. Co. v. Beltmann North American, Co.,* 883 F.2d 564, 565–66 (7th Cir.1989).

Illinois applies the "most significant relationship" test of the Restatement of Conflicts (1969) as the choice of law theory applicable to diversity actions based on contract. *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). That test requires the court to focus on: (1) the situs where the contract was negotiated; (2) situs in which the contract

was to be performed; (3) situs of the subject matter of the contract; (4) the place of domicile, incorporation and business between the parties, and to the center of gravity of the relationship between the parties. *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.*, 881 F.Supp. 338 (N.D.Ill.1995).

As noted above, the contract was negotiated in Michigan. The situs of the alleged unpaid royalties appears to be in Michigan. The location of performance has little bearing since it was not material to performance apart from mailing the checks to Sanders. Finally, at the time of contracting, Sanders and all of the defendants were clearly citizens and domiciled in Michigan. Hence, Michigan substantive law controls this action.

Sanders' attempts to challenge the defendants' Michigan citizenship is unpersuasive and does not affect the outcome of this court's analysis. Sanders, in an affidavit, attests that Franklin currently resides in California and not Michigan, but gives no basis of knowledge for his opinion. Franklin, in an affidavit, disputes Sanders' contention, claiming that she "currently reside[s] in Bloomfield Hills, Michigan and maintains three homes in the metropolitan Detroit area." (Franklin Aff., ¶ 1). Franklin further attests that she has lived in Michigan since 1982 and has neither maintained a California residence nor been physically present within California since 1982. *Id.* at ¶¶ 3–4. Sanders has presented no evidence to contradict Franklin's affidavit. Franklin, the so-called "Queen of Soul," began her career in Detroit, Michigan in the 1960s during the height of Motown Records. Absent evidence to contrary, the court believes that Franklin's historical ties to Michigan coupled with her ownership of three residences in Detroit strongly suggests that she is a Michigan citizen for the purposes of deciding whether to transfer based on convenience.

Likewise, SMP is incorporated in Michigan and appears to do business in Michigan. Sanders, relying on a return mail receipt in which SMP mail had been forwarded to California, contends that SMP must be located in California. That evidence, however, is inconclusive since the forwarding does not indicate a permanent change of address nor is it indicative of where SMP's principal place of business is located. Thus, the defendants are deemed citizens of Michigan for the purposes of this motion.

### 2. *Availability of evidence in each forum*

This factor is inconclusive in that the record reveals that Sanders is seeking royalties accrued prior to the 1994 which is memorialized in documents in the possession of several musical clearinghouses nationwide; none of which, though are in Illinois or Michigan. Hence, there will be some burden, however negligible, in moving those documents to either forum.

### 3. *Convenience to the parties*

This factor weighs in favor of the defendants in that all of the defendants are currently located in Michigan. Franklin and SMP representatives will be material witnesses at the trial. In addition, SMP's law firm, Lewis & Mundy, which handled the accounting at the center of the dispute is located in Michigan. The majority of other material witnesses—clearinghouse representatives and custodians of the royalty records—are not in Illinois or Michigan. Neither forum confers any discernible convenience to these witnesses and that consideration is therefore inconclusive.

### 4. *Interests of Justice*

The interest of justice element is concerned with the "efficient administration of the court system." *Coffey*, 796 F.2d at 221. That includes due consideration for the speed in which the case will proceed to trial, the court's familiarity with the applicable law, and the public's interest in having the case resolved in a particular forum. *Id.* Michigan undeniably has a greater public interest. As noted earlier, Michigan's law governs the alleged contract and this is an action between current and former Michigan residents. Moreover, the Eastern District of Michigan will obviously be more familiar with its forum state's substantive contract law. In addition, Michigan has a greater interest in adjudicating over matters involving business transactions occurring within its jurisdiction.

When measuring the greater convenience to most of the witnesses coupled with Michigan's strong interest in adjudicating claims ostensibly between two Michigan residents governed by Michigan law, the court concludes that in the interests of justice and party convenience, this action shall be transferred to the United States District Court for the Eastern District of Michigan.

## CONCLUSION

For the reasons set forth above, this action is hereby transferred to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404(a). In accordance with Northern District of Illinois General Rule 30(A), the court directs the clerk of the court to transfer this case forthwith.