John **FARRIS**, Plaintiff,

v.

Gebhard **SATZINGER**, **G.M.B.H. & Co.**, **Metallwarenfabrik**, an entity organized and existing under the Laws of the Federal Republic of Germany, Perma, Inc., a Foreign Corporation; and Forty Three Distributors Ltd., a Foreign Corporation, Defendants.

No. 86 C 20126.

United States District Court, N.D. Illinois, W.D.

Dec. 21, 1987.

Kurt P. Klein, Robert R. Fuenty, T. Jordan Gallagher, Gallagher, Fuenty & Klein, DeKalb, Ill., for plaintiff.

Robert R. McWilliams, Kostantacos, Traum, Reuterfors & McWilliams, P.C., Rockford, Ill., for Perma, Inc.

Richard L. Turner, Jr., Burns, Cronauer & Turner, DeKalb, Ill., for Forty Three Distributors, Ltd.

Eric A. Oesterle, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for Satzinger and G.M.B.H. & Co.

Charles F. Helsten, Clayton L. Lindsey, Thomas & Hinshaw, Culbertson, Rockford, Ill., for Satzinger.

James G. Ahlberg, Fearer, Nye, Ahlberg & Chadwick, Rochelle, Ill., for intervenors.

## ORDER

ROSZKOWSKI, District Judge.

This action comes before the court on the defendant, Forty Three Distributors, Ltd.'s motion for judgment on the pleadings as to Count III of the complaint. For the reasons set forth below, the court grants the defendant's motion.

## BACKGROUND

Taking the plaintiff's allegations as true, the following facts form the basis of the plaintiff's motion. On or about May 17, 1984, the plaintiff, John Farris was engaged in his duties as a maintenance employee of Del Monte Corporation at De-Kalb, Illinois. At that place and time, John Farris, attempted to remove a Perma Automatic Lubricator. As he did so, the Lubricator expelled a caustic fluid which struck Farris in the face and eyes seriously injuring him. His injuries included the loss of sight in his right eye and partial loss of sight in his left eye. The Lubricator was purchased by Del Monte Corporation from Perma, Inc. of Racine, Wisconsin. Perma, Inc. in turn had obtained and purchased the Lubricator from Forty Three Distributors, Ltd. of Duncan, British Columbia, Canada. G.M.B.H. & Co., Metallwarenfabrik manufactured and distributed the Lubricator.

The plaintiff filed a three-count complaint against Gebhard Satzinger, G.M.B.H. & Co., Metallwarenfabrik, Perma, Inc., and Forty Three Distributors, Ltd., in the federal court for the Northern District of Illinois. The plaintiff bases this action on diversity jurisdiction.

The defendant, Forty Three Distributors, moves this court to dismiss Count III of the complaint requesting judgment on the pleadings pursuant to Section 2–621 of the Illinois Code of Civil Procedure. The defendant's motion incorporates by reference the affidavit of Karl Joseph Bieling, agent and officer of the defendant, Forty Three Distributors, Ltd.

## DISCUSSION

The court faces two distinct issues in deciding the defendant's motion. The first is whether Section 2–621 of the Illinois Code of Civil Procedure applies in a suit in federal court based on diversity. If the court finds that Section 2–621 applies, then the second issue is whether Section 2–621 requires dismissal of Count III as to the defendant Forty Three Distributors.

The Illinois code section that is at the core of the defendant's motion is Illinois Revised Statutes Chapter 110, Section 2–621 (1987). Generally, Section 2–621 allows a strict product liability defendant who is in the chain of distribution but who is not a manufacturer to identify the manufacturer of the defective product. Once the defendant identifies that manufacturer, that defendant is to be dismissed from the lawsuit. Section 2–621 provides in pertinent part as follows:

(a) In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. The commencement of a product liability action based in whole or in part on the doctrine of strict liability in tort against such defendant or defendants shall toll the applicable statute of limitation and statute of repose relative to the defendant or defendants for purposes of asserting a strict liability in tort cause of action.

(b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section. Due diligence shall be exercised by the certifying defendant or defendants in providing the plaintiff with the correct identity of the manufacturer or manufacturers, and due diligence shall be exercised by the plaintiff in filing an action and obtaining jurisdiction over the manufacturer or manufacturers.

Ill.Rev.Stat. ch. 110 § 2–621(a), (b) (1987).

I. Choice of Federal or State Law

The Supreme Court has prescribed a two tier approach for determining whether state or federal law applies in a diversity action. First, the trial court must determine if there is a direct conflict between a state law and a federal rule. If both a state law and a federal rule cover the situation, the court must apply the federal rule. The court, however, can refuse to do so under rare circumstances not relevant to this decision. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1956).

If there is no conflict, the court should then enlist the analysis developed through *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. Contrary to popular belief, *Erie* does not merely stand for the proposition of labeling state law as substantive or procedural and the basing a choice of law on these labels. While the labels may serve some useful purpose, the core of the *Erie* analysis is the "outcome determinative" test. *Hanna*, 360 U.S. at 468, 85 S.Ct. at 1142. This test basically entails asking whether the application of the state rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against citizens of the forum, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would likely cause a plaintiff to choose federal court. *Hanna*, 360 U.S. at 468 n. 9, 85 S.Ct. at 1142 n. 9. In addition, the court should look at the rule in light of the twin aims of the *Erie* rule: discouragement of forum shopping and avoidance of inequitable administration of laws. *Hanna*, 360 U.S. at 468, 85 S.Ct. at 1142.

With regard to the first tier, neither party, in the instant case, brings up any direct conflict between a federal rule and Section 2–621. The court perceives none; accordingly, the first tier has been satisfied. The next tier requires an *Erie* analysis of Section 2–621.

At first blush, Section 2–621 appears to be far from outcome determinative. The Section is found in the Illinois Code of Civil Procedure and involves a "certification" procedure. Laws found in the procedural part of a state code are not often thought of as outcome determinative. Additionally, it seems that the Section merely expedites the process of pinning full liability on the manufacturer. These superficial impressions, however, are deceiving. The Illinois legislature has decided, through Section 2–621, to alter the tort common law and strict liability law in particular. *See Sims v. Teepak*, 143 Ill.App.3d 865, 97 Ill.Dec. 914, 917, 493 N.E.2d 721, 724 (4th Dist.1986).

Under the common law, all other elements of strict liability being proven, a retailer or distributor who distributes defective goods is just as liable to the plaintiff as a manufacturer. *Hammond v. North American Asbestos Corp.*, 97 Ill.2d 195, 206, 73 Ill. Dec. 350, 356, 454 N.E.2d 210, 216 (1983); *Thomas v. Kaiser Agricultural Chemicals*, 81 Ill.2d 206, 214, 40 Ill.Dec. 801, 805, 407 N.E.2d 32, 36 (1983). The actual culpability of the distributor is not relevant for purposes of common law strict liability. *Dunham v. Vaughn & Bushnell Manufacturing Co.*, 42 Ill.2d 339, 344, 247 N.E.2d 401, 403 (1969). In other words, whether the distributor had actual knowledge of the defect or created the defect is not important for purposes of liability. Section 2–621, however, carves out an exception to this substantive rule of tort liability. *See, Elizalde v. Owens–Illinois Glass Co., et al.*, No. 85 4438 (N.D.Ill. April 30, 1986) [Available on WESTLAW, 1986 WL 5663].

Section 2–621 does not merely speed-up the litigation process, it allows a non-manufacturer (retailer, wholesaler, or distributor) to escape liability. Nothing is more "outcome-determinative" than the application or nonapplication of a rule of liability. Granted, as a practical matter, a strictly liable distributor, under circumstances similar to that of a distributor dismissed under Section 2–621, could eventually receive contribution from the manufacturer. Section 2–621, however, exonerates the distributor in the first place, that is, if he meets Section 2–621 criteria.

Section 2–621 is a relatively new law and there is a dearth of case law on the exact issue of that Section's applicability in federal court. A very telling decision, for our purposes however, was handed down in a case dealing with state "screening requirements" in medical malpractice actions. In *Bradley Thompson v. Kishwaukee Valley Medical Group, et al.*, No. 86 C 1483 (N.D. Ill. October 1, 1986) [Available on WEST-LAW, 1986 WL 11381] (available on LEXIS/GENFED database), the district court grappled with whether to apply a state law that altered the common law of torts. In *Thompson*, the Illinois law required a plaintiff to attach an affidavit to his complaint declaring that the plaintiff had presented his case to a knowledgeable health professional and received a written report in which the professional states that there is a "reasonable and meritorious case for filing of such action." Failure to file such an affidavit in state court is grounds for dismissal. *See* Ill.Rev.Stat. ch. 110 § 2–622 (1987).

In its analysis, the *Bradley* court first found that no federal rule, in particular Federal Rules of Civil Procedure 8, 9 or 11, directly conflicted with the "screening requirement." Next, the court found, under an *Erie* analysis, that the federal court should apply the "screening requirement." In deciding this way, the *Bradley* court stated:

> The obvious intended effect of the screening procedure is to decrease the number of meritless medical malpractice suits. As one court has stated when ruling on the adoption of a similar screening procedure, given this intended effect, "it would be fundamentally unfair to subject one set of plaintiffs to the rule but not another set solely because of the fortuity of diversity. (citation omitted). Moreover, failure to enforce the screening rule in federal court would encourage the kind of forum shopping *Hanna* and *Erie* sought to eliminate an out of state plaintiff who thought his claim of doubtful merit would obviously choose to file his action in federal court rather than the state court, thereby avoiding the screening requirements of § 2–622.

The *Bradley* case, while not dealing with the exact issue in the instant case, is instructive in resolving the issue at hand. In the instant case, as in *Bradley*, the Illinois legislature has decided to change the common law of torts as it now stands. More importantly, the changes in both statutes significantly affects a plaintiff's ability to sue particular defendants. In short, if Section 2–621 applies, a plaintiff may only be able to hold the manufacturer strictly liable, while if the Section 2–621 does not apply, a plaintiff can hold anyone liable who put the defective product in the

stream of commerce (i.e. manufacturers, distributors, retailers, and wholesalers).

Clearly, as in *Bradley,* the application of the Illinois rule in the present case would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would encourage the plaintiff to choose federal court over state court. Indeed, if Section 2–621 is not applicable in federal court, a plaintiff may choose federal court to sue on a strict liability claim in order to hold all the suppliers of the defective product liable. In keeping with the twin aims of *Erie,* failure to apply Section 2–621 in federal court would encourage a plaintiff to forum shop and "strict liability" would be enforced differently in state and federal court based solely on "the fortuity of citizenship."

Additionally, Judge Moran, in *Bastian v. Wausau Homes, Inc.,* 638 F.Supp. 1325 (N.D.Ill.1986), impliedly found Section 2–621 to be "outcome-determinative" when he applied it in that case. Also, while not committing himself as to whether Section 2–621 belongs in federal court or not, Judge Aspen, in *Elizalde v. Owens–Illinois Glass Co., et al.,* No. 85 4438 (N.D.Ill. April 30, 1986) [available on WESTLAW, 1986 WL 5663] (available on LEXIS:GENFED database), temporarily placed Section 2–621 in the "outcome-determinative" category.

Based on the reasons set forth above, this court will apply Section 2–621 in this case.

## II. Does Section 2–621 apply to Forty Three Distributors?

■ With the first issue decided, the court must now apply Section 2–621 to the case at hand. As Judge Moran described, Section 2–621 "was designed for the typical situation where the plaintiff sues both a dealer and a manufacturer, and the dealer clearly is not liable as a result of his own conduct but rather solely because of strict liability principles, and the manufacturer is known, present and able to pay." (citations omitted). *Bastian,* 638 F.Supp. at 1326.

To be more particular, Section 2–621 allows a "nonmanufacturer" to escape strict liability in tort if it can in an affidavit certify "the correct identity of the manufacturer" of the defective product. Ill.Rev. Stat. ch. 110 Section 2–621(a).

However, as pointed out in *Bastian,* the Illinois legislature did not intend Section 2–621 to be a vehicle through which a distributor could escape the consequences of his conduct. Section 2–621 does not permanently displace the principles of tort causation. There is no dismissal if the plaintiff's action cannot reach a manufacturer or the manufacturer is insolvent. *Bastian,* 638 F.Supp. at 1327, 1326; Ill.Rev.Stat. ch. 110 Section 2–621(b).

Subsection (c) provides that a court shall not order the dismissal of any certifying defendant where the plaintiff can show one or more of the following:

(1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or

(2) That the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or

(3) That the defendant created the defect in the product which caused the injury, death or damage.

Ill.Rev.Stat. ch. 110, § 2–621 (c)(1)–(3) (1987).

The case at bar seems to be the typical case Judge Moran was speaking of in *Bastian.* In the instant case, the plaintiff sued the manufacturer and two distributors. In his own complaint, the plaintiff made clear that defendant Forty Three Distributors was merely a distributor-seller of the Perma Automatic Lubricator (Complaint ¶ 8, 12). More importantly, the defendant through the uncontroverted affidavit of Mr. Karl Joseph Bieling certifies to the court who the manufacturer is and denies creating, controlling or having knowledge of any defects. The plaintiff failed to respond in any way to the defendant's motion or Mr. Bieling's affidavit.

Accordingly, under the provisions of Illinois Code of Civil Procedure Section 2–621,

**490**

the court grants the defendant Forty Three Distributor's motion for judgment on the pleadings as to Count III.