**INDECK POWER EQUIPMENT COMPANY, an Illinois Corporation, Plaintiff,**

v.

**JEFFERSON SMURFIT CORPORATION, a Delaware Corporation, Defendant.**

No. 94 C 1498.

United States District Court, N.D. Illinois, Eastern Division.

March 22, 1995.

James L. Poznak, Law Offices of James L. Poznak, OakBrook, IL, for plaintiff.

Stephen Charles Schulte, Christopher Sullivan Canning, Winston & Strawn, Chicago, IL, Daniel M. Fitzgerald, Hoagland, Fitzgerald, Smith & Pranailis, Alton, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

This case is before the Court on plaintiff Indeck's motion to dismiss Count I of Defendant Smurfit's counterclaim for strict product liability. For the reasons cited below, the motion is DENIED.

## BACKGROUND

Plaintiff Indeck Power Equipment Company (Indeck) owns and leases various types of power generating equipment, including large, trailer mounted boilers designed to generate processed steam. Defendant Jefferson Smurfit Corporation (Smurfit) leased one of plaintiff's trailer-mounted boilers to provide a temporary source of steam while the boiler installed at Smurfit's Lafayette, Indiana plant underwent repairs. The leased boiler was delivered to the Lafayette plant on December 22, 1993, and operated until the morning of January 15, 1994, when a fire of unknown origin damaged both the trailer-mounted boiler and portions of Smurfit's plant.

Smurfit's answer to Indeck's Second Amended Complaint includes a counterclaim for strict products liability. Count I of the counterclaim alleges that the leased boiler was unreasonably dangerous and defective because it contained a malfunctioning Maxon valve, that this malfunctioning valve vented natural gas into the heated enclosure around the boiler controls, and ultimately caused the fire that damaged both the boiler and the plant. Smurfit seeks damages in excess of $50,000.

Plaintiff has moved to dismiss this Strict Products Liability count on the basis of 735 ILCS 5/2–621, which reads, in pertinent part:

(a) In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage ...
(b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, providing the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section.

Indeck has certified in an affidavit attached to its motion that the manufacturer of the allegedly defective Maxon valve is none other than the Maxon Corporation, of Muncie, Indiana, and now seeks dismissal of Count I under the cited Illinois statute, known as the "seller's exception." Defendant opposes the motion on two grounds, i.e. that this Illinois law does not apply to the fire that occurred in Indiana, or alternatively, that plaintiff does not merit dismissal of the Count because he is "within the categories set forth in subsection (c) ..."

Subsection (c) provides that a court shall not order the dismissal of any certifying [cross-]defendant where the [cross-]plaintiff can show one or more of the following:

(1) [omitted].

(2) That the [cross-]defendant had actual knowledge of the defect in the product which caused the injury, death, or damage; or

(3) [omitted].

In opposing Indeck's motion, Smurfit argues that Indeck was aware that the Maxon valve was defective as early as December 27th, 1993, because of the following facts: (1) Indeck's employee Mr. Burton, who was in Lafayette to oversee the installation and startup of the boiler, found a discrepancy on that date between the physical location of the Maxon valve (closed) and the position reflected by the position indicator light (open); (2) Smurfit's plant manager called Mr. Smith, Indeck's service manager, on that date to report that the valve was not functioning properly; (3) Mr. Smith wrote to Smurfit on December 28th to acknowledge that "the gas safety shutoff valve would not close properly." (4) Indeck ordered and shipped a replacement valve to the Lafayette plant; and (5) plaintiff's employee Mr. Burton referred orally to the Maxon valve as "defective" in the presence of Smurfit's plant manager. The Court will address these arguments separately.

## CHOICE OF LAW

Smurfit's first ground for urging the denial of Indeck's motion to dismiss Count I of the Counterclaim is that the Illinois "seller's ex-

ception" does not apply to this fire, which occurred in Indiana. Citing Illinois cases showing that Illinois follows the "most significant relationship" test in deciding conflict of law cases, Smurfit argues that Indiana has the most significant relationship with the fire and that its law should control.

In a diversity action, the Court applies the choice of law rules of the jurisdiction in which it sits. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Morris v. Jones,* 30 F.3d 1578, 1581 (7th Cir.1994); *Lazzara v. Howard A. Esser, Inc.,* 622 F.Supp. 382 (N.D.Ill.1985) *rev'd in part on other grounds,* 802 F.2d 260 (7th Cir.1986); *McIntosh v. Magna Systems, Inc.,* 539 F.Supp. 1185 (N.D.Ill.1982). Under Illinois's choice of law rules, had the parties chosen a forum by contract, that choice would be respected. *International Surplus Lines Co. v. Pioneer Life Ins. Co. of Illinois,* 209 Ill. App.3d 144, 154 Ill.Dec. 9, 568 N.E.2d 9 (1990). But here the lease agreement indicates that the contract is to be governed by the law of Illinois, and the purchase order requires the contract to be "construed in accordance with the laws of the state in which the goods are to be delivered or the services are to be performed ..." (Exhibit B to Defendant's Answer) The parties having failed to agree on the law which applies to this dispute, Illinois conflict of law principles must be applied.

Illinois has adopted the "most significant contacts" test of the Restatement Second of Conflicts of Law (1969) as the choice of law theory applicable to diversity actions sounding in both contract and tort. *Lazzara, supra,* at 384, (citing *McIntosh,* 539 F.Supp. at 1188.) This test incorporates the presumption that local law should govern unless another state has a more significant relationship. *Pittway Corp. v. Lockheed Aircraft Corp.,* 641 F.2d 524 (7th Cir.1981); *International Administrators, Inc. v. Life Ins. Co. of America,* 753 F.2d 1373 (7th Cir.1985), *Ingersoll v. Klein,* 46 Ill.2d 42, 262 N.E.2d 593 (1970). Under this test, the Court looks to the place of injury or of contracting, to the place where the conduct causing the injury occurred or the place of negotiation of the contract, to the place of performance, to the situs of the subject matter of the contract, to the place of domicile, incorporation and business between the parties, and to the center of gravity of the relationship between the parties. Restatement Second of Conflicts of Laws Section 188, 145 (1969), *Boise Cascade Home & Land v. Utilities, Inc.,* 127 Ill. App.3d 4, 82 Ill.Dec. 180, 468 N.E.2d 442 (1st Dist.1984); *Lazzara v. Howard A. Esser, Inc., supra,* at 384. Factors favoring the application of Indiana law include the facts that the contract was to be performed in Indiana, and that the injury occurred in Indiana. Factors favoring the application of Illinois law include the residence of the plaintiff, the location where the act that allegedly caused the harm occurred (shipment of the defective Maxon valve), and the location of defendant's principal office. Because both parties have principal corporate offices in Illinois, the Court concludes that the center of gravity of their relationship is also in Illinois. On balance, the Court concludes that the law of Illinois should be applied to this dispute.

## THE MOTION TO DISMISS

Although procedural in nature, 735 ILCS 5/2–621 has been applied in litigation in the federal courts, based on a determination that its application would be outcome-determinative. *See, e.g., Farris v. Satzinger G.M.B.H. & Co.,* 681 F.Supp. 485 (N.D.Ill.1987); *Bastian v. Wausau Homes, Inc.,* 638 F.Supp. 1325 (N.D.Ill.1986); *Elizalde v. Owens–Illinois Glass Co., et al.,* 1986 WL 5663 (N.D.Ill. 1986). Here, application of the Illinois rule would have so important an effect upon the fortunes of the litigants that failure to enforce it would encourage plaintiffs to choose federal court. If the rule is not enforced in federal court, plaintiffs might choose federal court to hold all the suppliers of a defective product liable. Thus, plaintiffs may be encouraged to "forum shop," and strict liability would be enforced differently in state and federal courts "on the fortuity of citizenship." *Farris v. Satzinger, supra* at 489. Accordingly, this Court will apply section 2–621 to the case.

■ The motion to dismiss under the "seller's exception," relying as it does on Illinois law, "does not fit easily into any category of pretrial motion available under the Federal Rules of Civil Procedure." *Dehmlow v. Austin Fireworks, Inc.,* 1993 WL 217256 (N.D.Ill.1993). The Court agrees, however, that it is most akin to a Rule 12(b) motion to dismiss. Magistrate Judge Lefkow so considered a similar motion in *Dehmlow, supra.* A motion to dismiss under Rule 12(b) tests the sufficiency of the complaint, rather than the merits of the suit. *Triad Ass'n. Inc. v. Chicago Housing Auth.,* 892 F.2d 583 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). All well-pleaded facts are taken as true, and all inferences are drawn in favor of the non-movant. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992). Dismissals for failure to state a claim are not favored, and the only question is whether relief is possible under any set of facts that could be established. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988); *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)).

■ Under Illinois law Count I cannot be dismissed if "[Indeck] had actual knowledge of the defect in the product which caused the injury, death, or damage." 735 ILCS 5/2–621(c)(2). The Court must determine whether Smurfit has alleged facts which demonstrate, or from which it can reasonably be inferred, that Indeck had actual knowledge of the allegedly defective Maxon valve before the valve allegedly failed and caused the fire. Smurfit has alleged that Indeck's representative found the valve in one position, when the position indicating light reflecting another position, as early as December 27th, that a replacement valve was ordered and sent to Lafayette, that Indeck's service manager wrote to Smurfit noting that the "valve was not operating properly," and that Indeck's representatives referred to the valve as "defective" on at least one occasion. Although Indeck has characterized this statement as having been made for the benefit of Smurfit, taken together with Smurfit's other allegations and viewed in the light most favorable to the non-movant, they sufficiently allege that Indeck had actual knowledge of the alleged defect.

**CONCLUSION**

The Court finds Illinois law applicable to the resolution of disputes under this contract. Thus, the "seller's exception" dismissal created by 735 ILCS 5/2–621 is available to the plaintiff. However, because the Court finds that Smurfit has sufficiently alleged actual knowledge of a defect by Indeck, the exception created by 735 ILCS 5/2–621(c)(2) operates to preclude dismissal. Therefore, plaintiff's Motion to Dismiss Count I of the Counterclaim is DENIED.