Lucy **FONTENOT** and Efrain **Roche,** h/w Plaintiffs,

v.

**DIGITAL EQUIPMENT CORP.,** Compaq Computer Corporation, Honeywell, Inc., Honeywell Information Systems, Inc., Bull HN Information Systems Inc., and Key Tronic Corporation, Defendants.

No. 95 C 5555.

United States District Court, N.D. Illinois.

Sept. 6, 1996.

Stephen G. Seliger, Laurie S. Elkin, Stephen G. Seliger, Ltd., Chicago, IL, for Plaintiffs.

Cathy McNeil Stein, McDermott, Will & Emery, Chicago, IL, Kenneth J. King, Beatie, King & Abate, New York City, Kimball R. Anderson, Gay R. Schreiber, Alexis MacDowall, Winston & Strawn, Chicago, IL, Robert Goodman, Debevoise & Plimpton, New York City, Julie P. Rubin, Querry & Harrow, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

ANDERSEN, District Judge.

Plaintiffs Lucy Fontenot and Efrain Roche bring this three-count products liability action against Digital Equipment Corporation

("Digital"), Compaq Computer Corporation ("Compaq"), and Key Tronic Corporation ("Key Tronic"). Defendants have filed motions to dismiss the complaint for failure to file an adequate certificate of merit as required by 735 ILCS 5/2–623. For the reasons set forth below, the motions are denied.

## BACKGROUND

As part of the Civil Justice Reform Amendments of 1995, 735 ILCS 5/2–623 ("section 2–623") sets forth certain requirements applicable to all products liability actions in Illinois. In such actions, section 2–623 generally requires that the plaintiff's attorney "file an affidavit, attached to the original and all copies of the complaint," averring either that (1) the attorney "has consulted and reviewed the facts of the case with a qualified expert ... who has completed a written report" that contains specified information and findings, or (2) the attorney cannot obtain the consultation prior to filing of the complaint due to an imminent expiring of a statute of limitations or because another person prevented testing of the product. 735 ILCS 5/2–623(a)(2). If the plaintiff's attorney files an affidavit under section 2–623(a)(2), the affidavit and expert's report required under paragraph (1) shall be filed within 90 days after the filing of the complaint. 735 ILCS 5/2–623(a)(2).

On August 30, 1995, plaintiffs filed a three-count complaint against Digital, Compaq, and Key Tronic in the Circuit Court of Cook County.[1] Specifically, Lucy Fontenot alleges that she suffered carpal tunnel syndrome and other injuries as a result of her continuous use of keyboard equipment manufactured by the various defendants. Counts I and II of the complaint sound in strict liability and negligence, respectively. Count II asserts a loss of consortium claim on behalf of Lucy Fontenot's husband, Efrain Roche.

Plaintiffs' attorney attached an affidavit to the complaint stating that she was unable to obtain a consultation as required by section 2–623(a)(1) before the expiration of the statute of limitations. This affidavit then triggered the 90–day extension to file an expert's report conforming to section 2–623(a)(1). See 735 ILCS 5/2–623(a)(2). On September 28, 1995, defendants removed the action to this Court based on diversity jurisdiction.

On November 27, 1995, within ninety days after the filing of the complaint, plaintiffs filed an affidavit and two expert reports authored by Karl Kroemer and one authored by Emil Pascarelli. On December 14, 1995, Compaq moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to satisfy the substantive requirements of section 2–623. This motion was joined by Digital and Key Tronic. Consequently, on December 19, 1995, plaintiffs requested time to file a supplemental report to cure the defects raised in Compaq's motion to dismiss. We permitted plaintiffs to file an amended certificate of merit but expressly noted that defendants did not waive their right to object to the timeliness of the filing as beyond the ninety-day deadline required by the statute. On February 9, 1996, plaintiffs filed supplemental reports authored by Karl Kroemer and David Thompson.

## DISCUSSION

### I. 735 ILCS § 5/2–623

Federal courts in this district have consistently applied the requirements of section 2–623 in diversity cases. See *Irizarry v. Digital Equipment Corp.*, 919 F.Supp. 301, 304 (N.D.Ill.1996); *Medrano v. Tenneco Equipment Corp.*, No. 95 C 50187, 1995 WL 756856, at *1 (N.D.Ill.Dec.12, 1995); *see also Farris v. Satzinger*, 681 F.Supp. 485, 489 (N.D.Ill.1987)(applying similar requirements in 735 ILCS 5/2–621); *Estate of Cassara by Cassara v. State of Illinois*, 853 F.Supp. 273, 281 (N.D.Ill.1994)(applying 735 ILCS 5/2–622). Section 2–623 provides in part:

(a) In a product liability action, as defined in Section 2–2101, in which the plaintiff seeks damages for harm, the plaintiff's attorney or the plaintiff, if the plaintiff is proceeding pro se, shall file an affidavit, attached to the original and all copies of

---

1. The original complaint also named Honeywell, Inc., Honeywell Information Systems, Inc., and Bull HN Information Systems, Inc. as defendants. Plaintiffs voluntarily dismissed these parties on March 26, 1996.

the complaint, declaring one of the following:

(1) That the affiant has consulted and reviewed the facts of the case with a qualified expert, as defined in subsection (c), who has completed a written report, after examination of the product or a review of the literature pertaining to the product, in accordance with the following requirements:

(A) In an action based on strict liability in tort or implied warranty, the report must:

(i) identify specific defects in the product that have a potential for harm beyond that which would be objectively contemplated by the ordinary user of the product; and

(ii) contain a determination that the product was unreasonably dangerous and in a defective condition when it left the control of the manufacturer.

(B) In any other product liability action, the report must identify the specific act or omission or other fault, as defined in Section 2–1116, on the part of the defendant.

(C) In any product liability action, the report must contain a determination that the defective condition of the product or other fault was a proximate cause of the plaintiff's harm.

  \*    \*    \*    \*    \*    \*

(b) When the defective condition referred to in the written report required under paragraph (1) of subsection (a) is based on a design defect, the affiant shall further state that the qualified expert, as defined in subsection (c), has identified in the written report required under subsection (a) either: (i) a feasible alternative design that existed at the time the product left the manufacturer's control; or (ii) an applicable government or industry standard to which the product did not conform.

(c) A qualified expert, for the purposes of subsections (a) and (b), is someone who possesses scientific, technical, or other specialized knowledge regarding the product at issue or similar products and who is qualified to prepare the report required under subsections (a) and (b).

735 ILCS 5/2–623.

For purposes of the present motions to dismiss, section 2–623 further provides that the failure to file an affidavit "shall be grounds for dismissal under section 2–619." 735 ILCS 5/2–623(e). Courts in this district, however, have not interpreted this provision as requiring mandatory dismissal with prejudice for failure to comply with the statute. In *Irizarry v. Digital Equipment Corp.*, 919 F.Supp. 301 (N.D.Ill.1996), Judge Aspen determined that an untimely filing did not warrant mandatory dismissal. *Id.* at 303–04 (*citing McCastle v. Mitchell B. Sheinkop, M.D., Ltd.*, 121 Ill.2d 188, 117 Ill.Dec. 132, 520 N.E.2d 293 (1987)(failure to file similar affidavit in medical malpractice actions, 735 ILCS 5/2–622, does not automatically dictate dismissal with prejudice)). Rather, the decision whether to permit amendments to add the necessary affidavits and reports is within the sound discretion of the trial court. *Id.* Similarly, in *Medrano v. Tenneco Equipment Corp.*, No. 95 C 50187, 1995 WL 756856 (N.D.Ill.Dec.12, 1995), Judge Reinhard concluded that, when a plaintiff has failed to comply with section 2–623, a dismissal of the action is not mandatory but rather the decision to dismiss lies within the court's discretion. *Id.* at \*2. He also found that it is within the trial court's discretion whether to permit a filing of an expert report beyond the ninety-day period. *Id.* at \*3.

■ We find the reasoning of our colleagues in *Irizarry* and *Medrano* compelling in the instant case. Accordingly, we exercise our sound discretion in determining whether to allow late filings or whether failure to comply with the substantive requirements of section 2–623 warrants mandatory dismissal with prejudice. In exercising our discretion, we consider factors such as bad faith or an intent to frustrate justice and whether granting leave to file will prejudice the defendant. *See Irizarry*, 919 F.Supp. at 305 (*citing Cato v. Attar*, 210 Ill.App.3d 996, 155 Ill.Dec. 500, 503, 569 N.E.2d 1111, 1114 (1991)). Additionally, we must also keep in mind that late filings should be liberally allowed so that

cases may be decided on the merits rather than on procedural technicalities. *Id.*

■ In the present case, defendants object to the timeliness of the two supplemental reports filed beyond the initial ninety-day period. However, there is no suggestion that plaintiffs acted in bad faith or with intentional dilatory tactics. Moreover, permitting an untimely filing of the supplemental reports will not prejudice the defendants as to the merits of the claim. In light of the interest in deciding the case on the merits, we grant leave to file the supplemental reports of Kroemer and Thompson.

## II. *Sufficiency of the Expert's Reports*

Although we grant leave to file the supplemental reports, all but Thompson's report fail to satisfy the requirements set forth in section 2–623. Additionally, the Thompson report is sufficient only as to defendant Digital. We address each expert report in turn.

■ The first Kroemer report, dated February 20, 1992, is entitled "State–Of–The–Art Report On Cumulative Trauma Disorders." This report "identifies defects in 'Qwerty' keyboards that have a potential for harm beyond that which would be objectively contemplated by the ordinary user of the product." (Balefski aff. at 1–2). The second Kroemer Report, dated August 17, 1995, is an abstract entitled "Ergonomic Deficiencies of Conventional Keyboards" which addresses "the causal link between repetitive activities and repetitive stress disorders." *Id.* Despite their broad educational value concerning repetitive stress disorders and "Qwerty" keyboards, these reports contain no facts specifically related to the keyboards manufactured by the present defendants and allegedly used by Lucy Fontenot. Nowhere does Kroemer indicate that he examined, either physically or otherwise, any of the defendants' keyboards identified in the complaint. Nor does the report indicate whether Kroemer reviewed the relevant scientific literature on the specific keyboards at issue here. Moreover, there is no indication that Kroemer reviewed plaintiff's medical records or spoke to her about the injuries allegedly caused by defendants' keyboards. Put simply, the reports lack a determination that Lucy Fonte-

not's harm was proximately caused by any of the specific defendants' products. Indeed, the reports do not even name the defendants much less identify their products and how they are linked to Lucy Fontenot's injuries.

■ We reach the same conclusion with regard to the Pascarelli report. Dr. Pascarelli defines Repetitive Strain Injures and their physiological basis. He further notes that he has examined and treated over a thousand patients with such injuries. More importantly, he emphasizes that a careful work history and thorough physical exam are necessary to determine whether the patient's injuries are work-related. Significantly, Dr. Pascarelli neither examined Lucy Fontenot nor made any determinations regarding her use of the defendants' keyboards. Again, this report also fails to mention or identify any of the keyboards manufactured by the present defendants.

■ Plaintiffs filed supplemental reports authored by Kroemer and Thompson to cure the defects in the original reports. The supplemental Kroemer report, however, also fails to satisfy section 2–623. This report consists of a one page letter in which Kroemer indicates that he reviewed three polaroid photographs sent to him by plaintiffs' local counsel. After describing the product in question as a "conventional" keyboard of approximately 101 keys, Kroemer concludes that this keyboard apparently has many of the design faults described in his previous 1995 report. Again, this report is devoid of any determination of the proximate cause of Lucy Fontenot's injuries. Kroemer does not even identify the manufacturer of the keyboard he is discussing in his letter. Moreover, there is no indication that he inspected any of defendants' keyboards or reviewed Lucy Fontenot's medical records. In sum, the report contains no facts specific to Lucy Fontenot and the proximate cause of her injuries.

■ Lastly, plaintiffs submitted a supplemental report by Thompson entitled "Ergonomic Analysis of a DEC Keyboard." Unlike the previous reports, however, Thompson actually examined a keyboard manufactured by defendant Digital (the

"DEC keyboard"). This same model was allegedly used by Lucy Fontenot for three years at the City College of Chicago and for two more years at Helene Curtis. Thompson also reviewed the relevant scientific literature on the DEC keyboard. Moreover, he discussed with Lucy Fontenot the job circumstances and working conditions surrounding her use of the DEC keyboard. Thompson concluded that the DEC keyboard is deficient in its design due to: (1) poor key layouts; (2) inadequate key tactile feedback; (3) excessive key forces required; and (4) lack of instructions accompanying the keyboard and its related equipment to instruct the operators in the special use circumstances of keyboarding and its related hazards. The report also discusses ways in which the keyboard could have been designed differently and warnings that should have been provided for operators. Consistent with section 2–623(a)(1)(C), the report concludes that "the design defects [of the DEC keyboard] outlined above contributed to the cumulative trauma injuries suffered by Lucy Fontenot." (Thompson Report at 19). The supplemental Thompson report therefore satisfies the substantive requirements of section 2–623 as to defendant Digital.

## CONCLUSION

Accordingly, the supplemental Thompson report submitted by plaintiffs satisfies the requirements of section 2–623 as to defendant Digital. Digital's motion to dismiss is therefore denied. The reports are clearly insufficient as to defendants Compaq and Key Tronic. Rather than dismiss Compaq and Key Tronic as parties to this suit, however, we exercise our discretion and deny their motions to dismiss without prejudice. We hereby order plaintiffs to file an affidavit and expert report as to Compaq and Key Tronic which conforms to section 2–623 on or before November 6, 1996. Failure to do so will result in dismissal of Compaq and Key Tronic from this suit with prejudice.

It is so ordered.