Susan UNGARO, as Special Administrator of the Estate of Shane Ungaro, deceased, Plaintiff,

v.

ROSALCO, INC., an Indiana corporation, and Fingerhut Corporation, a Minnesota corporation, Defendants.

No. 96 C 3244.

United States District Court,
N.D. Illinois.

Dec. 4, 1996.

See also: 1996 WL 473381.

Rick M. Schoenfield, Kimberlee Massin, Schoenfield & Swartzman, Chicago, IL, Mark S. Stein, Skokie, IL, for Susan Ungaro.

William Edward Spizzirri, Michael James Mullen, Kralovec, Marquard, Doyle & Gibbons, Chicago, IL, for Rosalco, Inc.

Mark D. Johnson, John W. Bell, Johnson & Bell, Ltd., Chicago, IL, for Fingerhut Corp.

### MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on defendant Fingerhut Corporation's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 735 ILCS 5/2–621 of the Illinois Code of Civil Procedure. For the reasons discussed below, the defendant's motion is granted.

### BACKGROUND

The plaintiff, Susan Ungaro ("Ungaro" or "Plaintiff") brought negligence and strict product liability claims against the defendants, Rosalco Incorporated ("Rosalco") and Fingerhut Corporation ("Fingerhut"). Un-

garo is the special administrator of the estate of her son, Shane Ungaro, who died from positional asphyxia while sleeping in a bed that she ordered from Defendant Fingerhut. In Ungaro's negligence count, she alleges that Rosalco and Fingerhut negligently manufactured and sold a bed which they knew or should have known was dangerous to small children, and that they negligently failed to warn users of the bed of its condition. In her strict liability count, she alleges that Rosalco and Fingerhut sold a bed that was defective and unreasonably dangerous in both its design and its lack of warnings. For purposes of the motion to dismiss only, we accept as true the well-leaded allegations of the complaint.

On approximately March 23, 1994, Ungaro bought a child's bed from a mail-order catalogue operated by Defendant Fingerhut. The bed that Ungaro ordered was designed to look like a race car. Fingerhut purchased the juvenile bed from the manufacturer, Rosalco, and then shipped the bed to Ungaro on April 18, 1994. The bed, measuring 81 inches in length, 42 inches in width and 16 inches in height, was shipped along with a mattress. The standard twin-sized mattress which was sold and intended to be used with the bed was too small for the bed frame. This left a gap between the bed frame and the mattress.

Plaintiff Susan Ungaro purchased the bed for her son Shane, who was born on April 9, 1994. On November 18, 1995, Gladys Ungaro placed Shane in the bed for a nap with his head at the top of the bed. Upon returning to the room to wake Shane from his nap, Gladys Ungaro observed that Shane's neck was on top of one of the side bed frames. Due to the fact that Shane Ungaro was positioned with his neck upon the bed frame, he was unable to breathe and died. The Cook County Medical Examiner's office determined that the cause of death was positional asphyxia.

In May 1996, Plaintiff filed the two-count complaint. Defendant Fingerhut Corporation now moves to dismiss the complaint.

## LEGAL STANDARD

The purpose of a motion to dismiss, pursuant to Federal Rule 12(b)(6), is to test the sufficiency of the complaint and not to decide the merits of the case. Defendants must meet a high standard in order to have a complaint dismissed for failure to state a claim upon which relief may be granted since, in ruling on a motion to dismiss, the court must construe the complainant's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). *See also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Doe on Behalf of Doe v. St. Joseph's Hospital,* 788 F.2d 411, 414 (7th Cir.1986). Nonetheless, in order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. *Gray v. Dane County,* 854 F.2d 179, 182. (7th Cir.1988). We now turn to the motion before us with these principles in mind.

## DISCUSSION

Plaintiff's complaint contains two counts. Count I is premised on a negligence theory of liability, while Count II is premised on a claim for strict liability, based on the fact that the product was defective and unreasonably dangerous. Fingerhut filed a motion to dismiss the complaint under an Illinois statute. Although the briefs do not consider the claims separately, we will do so, because of an arguable ambiguity in the scope of the statute.

### I. Strict Product Liability Claim

■ Although Plaintiff does not refer to the statute, her strict liability claim against the defendants is subject to the Illinois "Distributor Statute," 735 ILCS 5/2–621, which governs the liability of non-manufacturer defendants in product liability actions. Under

this "Distributor Statute," non-manufacturers of a defective product are generally not liable for the sale of a defective product. 735 ILCS 5/2–621. Specifically, the statute provides that in any product liability action against a defendant other than the manufacturer, that party upon answering or otherwise pleading must "file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage." 735 ILCS 5/2–621(a). Distributors which are named in a strict liability action and which offer an uncontroverted affidavit certifying the identity of the manufacturer and denying creation, control of, or knowledge of any defect, are then usually entitled to escape strict liability. *Farris v. Satzinger,* 681 F.Supp. 485, 489 (N.D.Ill. 1987).

However, this statute includes numerous exceptions, including three that are at issue here. First, a non-manufacturer distributor should not be dismissed from a suit where the manufacturer of a defective product no longer exists. 735 ILCS 5/2–621(b)(3). Second, a distributor may be held liable if a plaintiff can show that the manufacturer is unable to satisfy judgment. 735 ILCS 5/2–621(b)(5). Finally, a distributor is not entitled to dismissal and may still be held liable where the distributor "had actual knowledge of the defect in the product which caused the injury, death or damage." 735 ILCS 5/2–621(c)(2). Plaintiff argues that Fingerhut is not protected by the "Distributor Statute" because it falls within each of these three exceptions.

■ Preliminarily we note that, while the statute is procedural in nature, it nevertheless has been applied to litigation in federal courts, because its application would be outcome-determinative. See, e.g., *Farris v. Satzinger G.M.B.H. & Co.,* 681 F.Supp. at 488. Furthermore, if the Illinois rule were not enforced in federal court, "plaintiffs might choose federal court to hold all suppliers of a defective product liable." *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.,* 881 F.Supp. 338, 341 (N.D.Ill.1995).

**A. Rosalco, Incorporated's Existence and Ability to Satisfy Judgment**

■ Plaintiff Susan Ungaro first claims that Fingerhut is not entitled to dismissal because the manufacturer of the race-car bed, Rosalco Woodworking, no longer exists. Plaintiff's response to the motion to dismiss states that a letter dated October 25, 1996 shows that Rosalco Woodworking ceased operations on December 10, 1994. Plaintiff asserts that the manufacturer fails to exist and thus the distributor, Fingerhut, should not be dismissed under 5/2–621(b). This allegation, however, is unfounded. In its reply brief, Defendant Fingerhut attached a certified copy of merger documentation between Rosalco Woodworking, Inc. and Rosalco, Inc. This documentation states that by virtue of the merger, Rosalco Woodworking was absorbed, as were its assets and liabilities, into Rosalco, Inc. Under Illinois law, "any claim existing or action proceeding pending by or against any such [merged or consolidated] corporation may be prosecuted to judgment as if such merger or consolidation had not taken place, or such surviving or new corporation may be substituted in its place." 805 ILCS 5/11.50. Thus, the manufacturer in this case exists under the name of Rosalco, Inc. and Plaintiff can pursue her claim for strict product liability against it.

Plaintiff also argues that Fingerhut is not protected by the statute because the manufacturer of the bed is judgment-proof. As stated above, the manufacturer's assets were all sold to Rosalco, Inc., and it appears that Rosalco, Inc. still exists. Moreover, aside from her blanket allegations, Plaintiff has failed to show that Rosalco, Inc. is unable to satisfy any judgment imposed by this court. Therefore, we also refuse to apply the exception pertaining to judgment-proof manufacturers.

**B. Fingerhut Had No Actual Knowledge of a Defect**

■ Plaintiff Susan Ungaro also claims that Fingerhut should not be dismissed from this suit because of its knowledge of the bed's defect—the gap created by the difference in size of the mattress to that of the bed frame. As stated above, a non-manufactur-

ing defendant who neither contributed to, nor had knowledge of, an alleged defect may defer liability to the manufacturer. *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.*, 881 F.Supp. at 341–42.

Plaintiff's complaint does not contain any such allegation of "actual knowledge." Plaintiff states only that Defendant Fingerhut should have known that the bed was defective because of the design. In support of her assertion, Plaintiff merely states that because of the size of the mattress relative to the size of the bed, Defendant Fingerhut had actual notice of potential harm. This assertion is insufficient under the law. Contrary to Plaintiff's assertions, Illinois law requires that a defendant distributor has *actual knowledge* of a defect in order to be held liable. See *Logan v. West Coast Cycle Supply Co.*, 197 Ill.App.3d 185, 191, 143 Ill.Dec. 153, 157, 553 N.E.2d 1139, 1143 (2nd Dist. 1990) (stating that in order to preclude the dismissal of a defendant, it is the plaintiff who must show that the defendant had actual knowledge of the defect).

Because the Plaintiff has failed to allege that the defendant distributor had actual knowledge of the defect, her claim does not fall within this exception. See *Lamkin v. Towner*, 138 Ill.2d 510, 150 Ill.Dec. 562, 563 N.E.2d 449, 459 (Ill.1990) (ruling that an affidavit stating that the distributor had no actual knowledge of the defect in the product is sufficient to effectuate the dismissal of a non-manufacture under the Distributor Statute). Therefore, the strict liability claim against Fingerhut must be granted.

### II. Plaintiff's Negligence Claim

■ We examine the negligence claim separately. While the parties do not discuss the negligence claim at length in their briefs, we pause to note that it is not entirely clear whether the Distributor Statute also applies to *negligence* actions arising out of conduct by product distributors. The statute applies to "any product liability action based on any theory or doctrine." The phrase "any product liability action" implies that the statute only covers actions for strict liability. However, the phrase "based on any theory or doctrine" seems more explicit in its scope—that is, it extends to all actions arising out

allegedly defective products, whatever the theory, and including those predicated on a negligence theory of liability. Moreover, when the Illinois legislature last revised the statute in 1995, it used the current language—referring to "any product liability action based on any theory or doctrine"—to replace "any product liability action based in whole or in part on the doctrine of strict liability in tort." See Historical and Statutory Notes to 735 ILCS 5/2–621 (noting amendment of the statute by P.A. 89–7). This amendment clearly indicates the intent of the legislature to extend the coverage of the statute beyond strict liability actions. Therefore, the statute applies to Count I of the complaint, alleging negligence.

Since the statute applies to the negligence count, we apply the same analysis. Under the statute, a non-manufacturer defendant is not liable unless it falls within one of the exceptions. Fingerhut does not presently fall within any of these exceptions, because the manufacturer still exists and is able to satisfy judgment, and because Fingerhut is not alleged to have had actual knowledge of the defective nature of the product. Therefore, the negligence claim against Fingerhut must also be dismissed under the statute.

### CONCLUSION

For the reasons set forth above, the defendant's motion to dismiss the complaint against Defendant Fingerhut is granted.